UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ROSA ILIANA RODRIGUEZ,             :

                          :                22 Civ. 10665 (GS)
               Plaintiff,     :

                          :       OPINION AND ORDER
       - against -        :

COMMISSIONER OF SOCIAL SECURITY,  :

               Defendant.  :
-----------------------------------------------------------------x

**GARY STEIN, United States Magistrate Judge:**

      Plaintiff Rosa Iliana Rodriguez seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of a final determination denying her claims for social security disability benefits and supplemental security income. Both parties have moved for judgment on the pleadings pursuant to Fed R. Civ. P. 12(c). For the reasons set forth below, Rodriguez's motion is **GRANTED**, the Commissioner's cross-motion is **DENIED**, and the case is remanded for further proceedings.

## BACKGROUND

### A. Procedural History

      On January 28, 2016, Rodriguez filed applications for Social Security Disability ("SSD") benefits under Title II of the Social Security Act and for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. (Administrative Record ("AR") 152-62 (Dkt. No. 11)). Plaintiff alleges a disability onset date of November 27, 2015 and claims both physical and mental impairments. (AR 628).

The Social Security Administration ("SSA") initially denied Rodriguez's applications on March 23, 2016.  (AR 120-25).  Rodriguez requested a hearing on April 20, 2016.  (AR 128).  A hearing was conducted on July 9, 2018 before Administrative Law Judge ("ALJ") Seth I. Grossman.  (AR 33-78).

In a decision issued on October 29, 2018 (the "2018 ALJ Decision"), ALJ Grossman found that Rodriguez was not disabled within the meaning of the Social Security Act and thus denied both of her applications for benefits.  (AR 672-85).  On January 10, 2020, the Appeals Council denied Rodriguez's request for review. (AR 690-92).

Rodriguez timely sought judicial review in this Court and, on March 24, 2021, filed a motion for judgment on the pleadings.  (*Rodriguez v. Commissioner*, No. 20-Civ. 2183 (PED) (S.D.N.Y.), Dkt. Nos. 1, 18-19).  After seeking multiple extensions of time to respond (*id.*, Dkt. Nos. 21-23), the Commissioner stipulated to a reversal and a remand for further administrative proceedings, which was so-ordered by Magistrate Judge Paul E. Davison on August 27, 2021.  (*Id.*, Dkt. No. 25; AR 713).

On October 20, 2021, the Appeals Council vacated the ALJ's final decision, finding that the decision "did not contain a sufficient evaluation of the claimant's alleged mental impairments."  (AR 709).  The case was remanded with specific directions for the ALJ to follow on remand.  (AR 709-10).

On remand, ALJ Grossman held a hearing on August 8, 2022.  The hearing was held by telephone due to the COVID-19 pandemic.  (AR 652-68).  On August 18,

2022, ALJ Grossman issued a decision (the "2022 ALJ Decision") adhering to his prior determination that Rodriguez was not disabled and denying her applications for benefits.  (AR 628-45).  The Appeals Council did not assume jurisdiction within 60 days of the ALJ's decision, at which point the ALJ's decision became the final agency action after remand.  *See* 20 CFR § 404.984.

Rodriguez timely commenced this action on December 19, 2022.  (Dkt. No. 1).  The Commissioner[1] answered the Complaint by filing the administrative record on April 3, 2023.  (Dkt. No. 10).  Rodriguez filed a motion for judgment on the pleadings and a memorandum of law in support of the motion on June 2, 2023.  (Dkt. Nos. 12, 13 ("Br.")).  The Commissioner submitted a brief opposing Rodriguez's motion on July 19, 2023 and indicating that she was cross-moving for judgment on the pleadings.  (Dkt. No. 14 ("Opp.")).[2]  Rodriguez elected not to file a reply brief.  (*See* Dkt. No. 15).

---

[1] At the time this action was commenced, the Acting Commissioner of Social Security was Kilolo Kijakazi.  On December 20, 2023, Martin T. O'Malley became the Commissioner of Social Security.  Accordingly, this Opinion & Order uses male pronouns when referring to the Commissioner.

[2] The Commissioner did not file a cross-motion for judgment on the pleadings.  Nonetheless, in its conclusion, the Commissioner's brief asks, *inter alia*, that the Court "grant the Commissioner's cross-motion for judgment on the pleadings."  (Opp. at 21).  The Commissioner's brief states that because Rules 5, 6 and 7 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), and this Court's Standing Order M 10-468, 22 Misc. 329 (LTS), "provide that the parties' submissions presenting these actions for decision will be styled as briefs," the Commissioner's response "is styled as a brief in opposition, rather than a cross-motion."  (Opp. at 1 n.2).  The Commissioner is confused.  A brief or memorandum of law filed *in support* of a motion does not relieve the putative movant of the need to file a separate document styled *as a motion* in accordance with Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").  Because it is evident that the Commissioner intended to file a cross-motion for judgment on the pleadings, the Court will overlook this failure to comply with Rule 7(b)(1) and deem the Commissioner's brief to constitute a cross-motion.  In the future, however, the Commissioner is admonished to file a proper cross-motion if he wishes the Court to grant such relief.

## B. Administrative Record

Throughout these proceedings, Rodriguez's disability claim has emphasized her alleged physical impairments, which are considerable. In both his 2018 Decision and his 2022 Decision, the ALJ found under step two of the five-step test for reviewing social security claims that Rodriguez suffers from several "severe" physical impairments. (AR 631, 674). But in both decisions, the ALJ ruled against Rodriguez at steps three and four and concluded that her physical impairments did not render her disabled. (AR 636-45, 678-84).

In this Court, Rodriguez does not challenge the 2022 ALJ Decision with respect to her physical impairments. Rather, she contends that the ALJ erred in finding her claimed *mental* impairments—depression, anxiety, and bipolar disorder—to be non-severe and further contends that these impairments justify a finding of disability.[3] Accordingly, the Court's discussion of the administrative record will focus on the evidence and the ALJ's findings as they relate to Rodriguez's mental impairments, referencing her physical impairments only insofar as they are relevant to the pending motions.

### 1. Rodriguez's Background

Rodriguez was 56 years old on the alleged onset date of her disability, November 27, 2015, and is 65 years old currently. (AR 152). She received a GED degree in 1986. (AR 39, 292). When she filed for social security benefits in January

---

[3] Pl. Mem. at 11 ("While the Plaintiff suffers physical impairments, she is requesting review of that portion of the ALJ's decision that found Plaintiff's mental impairments to be non-severe.").

2016, Rodriguez was receiving public assistance and living in an apartment in Manhattan with her then-14-year-old daughter.  (AR 155, 292).

Rodriguez worked for 22 years as a medical biller and receptionist until 2010, when the medical center where she worked closed.  (AR 39, 64, 460).  She was unemployed for more than a year.  (AR 100, 460).  She then worked as a cashier at a Family Dollar Store, as a packing and shipping clerk in a warehouse, and briefly in 2015—the last time she was employed—as a groundskeeper for the New York City Parks & Recreation Department.  (AR 64, 99-100, 170).

## 2.  Mental Health Evidence Prior to 2018 ALJ Decision

### a.  Rodriguez's Initial Diagnosis

In August 2015, Rodriguez was referred for a mental health evaluation. (AR 310).  Ever since losing her job at the medical center in 2010, she experienced symptoms of depression, but her symptoms had intensified over the past year. (AR 310, 460).  She reported little interest or pleasure in doing things, feelings of hopelessness, trouble concentrating, and actively thinking about hurting herself. (AR 310).  Rodriguez received a score of 26 on a Patient Health Questionnaire-9 ("PHQ-9") test, which is used to diagnose depression.  (*Id*.).  This rating, one rung below the highest possible score, indicates "Severe Depression."[4]  (*Id*.).

---

[4] "A PHQ-9 self-assessment test is a screening tool for depression based on DSM-IV symptom criteria and ranked on a scale of severity.  A rating of 1 to 5 equates with minimal depression, 5 to 9 with mild depression, 10 to 14 with moderate depression, 15 to 19 with moderately severe depression and 20 to 27 with severe depression."  *Thompson v. Colvin*, No. 12 Civ. 7024 (PAE) (HBP), 2014 WL 7392889, at *5 n.4 (S.D.N.Y. Dec. 29, 2014).

Rodriguez's physician felt she was "at high risk" and diagnosed her with Major Depressive Disorder (non-specified).  (AR 310-11).  He wanted to refer her to a psychiatric Emergency Room for immediate care, although it is unclear if Rodriguez went to the Emergency Room at that time.  (AR 310).  Three months later, still suffering anxiety and at times "so overwhelmed by sadness" that she considered hurting herself, she began seeing a psychologist at the Roberto Clemente Center in Manhattan.  (AR 292, 461).

### b.  Consultative Examination by Dr. Kushner

Dr. Michael Kushner performed a consultative psychiatric examination of Rodriguez in February 2016.  (AR 292-95).  While Rodriguez reported experiencing symptoms of depression including "crying spells that seem to come out of nowhere," she was no longer having thoughts of suicide.  (AR 292).  Dr. Kushner diagnosed her with unspecified depressive disorder and unspecified anxiety disorder.  (AR 295).

Dr. Kushner found no evidence of limitation in terms of Rodriguez's ability to follow and understand simple directions and instructions or to make appropriate decisions.  (AR 294).  However, he found that, in terms of maintaining attention and concentration, maintaining a regular schedule, learning new tasks, and performing complex tasks under supervision, "there may be up to moderate limitations."  (*Id*.).  He also found that "there are up to moderate limitations" in Rodriguez's ability to relate adequately with others and deal appropriately with stress.  (*Id*.).

Overall, Dr. Kushner opined that Rodriguez's psychiatric problems "d[id] not appear to be significant enough to interfere with [her] ability to function on a daily basis." (AR 294-95).

### c. Mental RFC Assessment by Dr. Brown

In March 2016, a State agency psychological consultant, Dr. D. Brown, assessed Rodriguez's mental impairments in connection with her disability claim. (AR 90-101, 676).  Dr. Brown did not examine Rodriguez.  He assessed that Rodriguez's medically determinable mental impairments, *i.e.*, affective disorders and anxiety-related disorders, did not restrict her daily living activities or lead to repeated episodes of decompensation.  (AR 94).  Still, Dr. Brown indicated that Rodriguez's affective disorders (depression) were "severe."  (AR 93).  He also found Rodriguez had "moderate" difficulties in maintaining concentration, persistence, or pace and "mild" difficulties in maintaining social functioning.  (AR 94).

More specifically, while finding no significant limitations in numerous mental residual functional capacity ("RFC") areas, such as the ability to understand, remember and carry out short and simple instructions, Dr. Brown found that Rodriguez was "moderately limited" in her ability to: (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual; and (4) respond appropriately to changes in the work setting.  (AR 97-98).

Dr. Brown's RFC assessment concluded that Rodriguez "retains the capability for the basic mental demands of unskilled work." (AR 99; *see also* AR 93). Thus, while the evidence showed that Rodriguez "has some limitations in the performance of certain work activities," these limitations would not prevent her from performing her past relevant work as a cashier. (AR 100). Notably, Dr. Brown assumed that Rodriguez's past work as a cashier was unskilled (SVP 2). (AR 99). A vocational expert later testified, and the ALJ later found, that Rodriguez's past work as a cashier was semi-skilled (SVP 3). (*See* B.3 & B.4, infra). Her past relevant work as a medical biller and receptionist is also considered semi-skilled (SVP 4). (AR 64). Dr. Brown did not render an opinion that Rodriguez retained sufficient mental functioning to work a semi-skilled job.

### d.  Evaluations by Dr. Vilaro-Colon

In August 2016, Dr. Miguel Vilaro-Colon of the Roberto Clemente Center conducted a psychiatric evaluation of Rodriguez. Rodriguez reported depression, anxiety, an inability to sleep, feeling uncomfortable among people, and having no friends. (AR 480). Dr. Vilaro-Colon found that Rodriguez had a severely depressed mood, a severely constricted affect, moderate motor retardation, and partial/limited insight. (AR 481-82). He also found she was oriented to time, place, and person and had normal thought process, no thoughts of hurting herself or delusions, and adequate judgment for basic needs. (AR 481).

Rodriguez returned for another evaluation by Dr. Vilaro-Colon in November 2017. (AR 493-94). She continued to report depression, anger, and sleeplessness, as

well as "[a]t time[s] feel[ing] homicidal and at times suicidal."  (AR 493).  This time
Dr. Vilaro-Colon found that Rodriguez had a moderately anxious mood and a
moderately constricted affect, while reiterating his favorable findings from the prior
exam.  (AR 494).

The evaluation indicates that Rodriguez had no history of psychiatric
hospitalizations and was not taking any psychiatric medications.  (AR 493).  Dr.
Vilaro-Colon prescribed quetiapine (Seroquel), used to treat depression and bipolar
disorder.  (AR 248, 494).  Since 2015, Rodriguez also took gabapentin, an
anti-anxiety and pain relief medication.  (AR 248, 468).

### e.  Assessment by Treating Psychotherapist

Rodriguez continued to undergo psychotherapy treatment at the Roberto
Clemente Center, albeit irregularly, during 2016, 2017 and 2018.  (AR 465-527).[5]
Her treating psychotherapist beginning in or around late 2017 was Maria Jimenez,
a psychology extern.  (AR 496).  In April 2018, Jimenez expressed her opinion that
Rodriguez "could benefit from help at home given her functional impairment due to
her mental illness."  (AR 420).  Jiminez noted that Rodriguez "is diagnosed with
major depressive disorder with anxious features, moderate severity."  (AR 420).

---

[5] The Commissioner claims that Rodriguez attended only twelve therapy sessions in 2016, 2017 and 2018.  (Opp. at 15-16).  The record shows twice that number.  (See AR 465-83 (four sessions in 2016); AR 493-96 (two sessions in 2017); AR 498-527 (sixteen sessions during the first half of 2018); AR 1223-24 (two sessions in late 2018)).  There may have been additional sessions that are not documented.  (See, e.g., AR 292 (Rodriguez statement that she had been seeing a therapist "once a week" from November 2016 to February 2016); AR 468 (noting that Rodriguez had been in couple's therapy for four months from February to June 2016)).  Some lapses in treatment appear to be attributable to Rodriguez's therapist leaving.  (AR 1156 ("Pt reported her therapist left and she was not assigned a new therapist even though she called several times")).

In a medical assessment of Rodriguez's ability to perform work-related activities prepared in June 2018, Jimenez stated that Rodriguez "experiences significant difficulty maintaining relationships, recalling information and details, and maintaining attention" and "has significant impairment regulating her emotions." (AR 458). Jimenez added that when under stress, Rodriguez "experiences panic attacks followed by crying spells." (*Id.*). Jimenez assigned a rating of "Poor or None"—meaning "[n]o useful ability to function"—in the following areas: dealing with the public; using judgment; dealing with work stress; maintaining attention and concentration; understanding, remembering, and carrying out complex or detailed job instructions; behaving in an emotionally stable manner; and relating predictably in social situations. (AR 458-59).

### 3. The 2018 Administrative Hearing

Rodriguez initially appeared before ALJ Grossman on April 13, 2018 without an attorney, but quickly realized she needed the assistance of an attorney. (AR 80-88). The hearing was adjourned and resumed on July 9, 2018, with Rodriguez then represented by counsel. (AR 36).

The hearing focused mainly on Rodriguez's medical issues. When asked by the ALJ why she was incapable of working, Rodriguez replied: "I'm always in pain, I go to physical therapy. My back is injured, I have a herniated disc." (AR 39). Her attorney elicited that she was prescribed a cane and a walker. (AR 43, 46-47). An impartial medical expert testified that the cane and walker were not medically necessary, that Rodriguez's physical impairments did not meet or equal any of the

listed impairments in the relevant social security regulations, and that she
remained capable of doing light work.  (AR 54-58).  An impartial vocational expert
testified that a person with Rodriguez's postural limitations could perform her past
relevant work as a medical biller.  (AR 69).

Although Rodriguez's counsel did not elicit any testimony about Rodriguez's
mental impairments, he did bring to the ALJ's attention that the consultative
examining psychiatrist and treating psychologist found that Rodriguez had
"numerous moderate limitations" and was "limited to unskilled work."  (AR 71).  He
argued that if Rodriguez was limited to unskilled work, that meant she would "grid
out at light and sedentary" and thus be disabled.  (AR 71-75; *see also* Section B,
*infra*).

### 4.  The 2018 ALJ Decision

In his decision, dated October 29, 2018, the ALJ found, at step one, that
Rodriguez had not engaged in substantial gainful activity since the alleged onset
date of November 27, 2015.  (AR 674).  He also found, at step two, that Rodriguez
suffered from several severe physical impairments: bilateral knee conditions,
degenerative disc disease of the spine, obesity, rheumatoid arthritis, coronary
artery disease, and hypertension.  (*Id.*).  Relying on the testimony of the medical
expert, the ALJ nonetheless concluded, at step three, that Rodriguez's physical
impairments did not meet or equal any of the listed impairments in 20 CFR § 404,
subpt. P, app. 1.  (AR 678-89).

11

The ALJ reached a different determination regarding Rodriguez's medically determinable mental impairments, namely, depressive disorder and anxiety disorder. The ALJ found that these impairments "do not cause more than minimal limitation in [Rodriguez's] ability to perform basic mental work activities and are therefore nonsevere." (AR 677).

In reaching this conclusion, the ALJ reviewed the evidence regarding Rodriguez's mental health at some length. He gave only "partial weight" to Dr. Kushner's February 2016 opinion, disagreeing with Kushner's findings of up to moderate limitations in certain areas because "the overall record is not consistent with moderate limitations in mental functioning." (AR 675-76). Similarly, the ALJ gave only "partial weight" to Dr. Brown's March 2016 mental RFC assessment, appearing to reject any finding by Dr. Brown that Rodriguez had moderate limitations or could only perform unskilled work, again because "[t]he overall record shows no more than mild limitations in [mental] functioning." (AR 676-77).

The ALJ gave "little weight" to the opinion of Rodriguez's treating source, Ms. Jimenez. (AR 676). He found there was "no objective medical evidence" supporting Jimenez's view that Rodriguez needed the assistance of a home attendant. (*Id*.). He also found that the "extreme limitations" described by Jimenez were "in stark contrast to [Rodriguez's] presentation at her other consultative exams and appointments of record" showing "no more than mild findings on exam." (*Id*.). The record, according to the ALJ, did not show "consistent medical treatment" but rather "long gaps in care, inconsistent with a disabling condition." (*Id*.).

12

The ALJ also analyzed each of the four specific areas of mental functioning, known as the "paragraph B" criteria, set forth in 20 CFR § 404, subpt. P, app. 1. For each area, he found that the overall record shows "no more than mild" functional limitations.  (AR 677-78).  Among other things, the ALJ noted that Rodriguez "can use public transportation and shop without reporting difficulty interacting with others;" she "can concentrate and persist to engage in activities such as watch[ing] television" and had "persisted through many medical appointments;" she "largely described" limitations on her daily activities as the result of her physical, not mental, conditions; and "[t]here is no evidence that [Rodriguez] stopped working due to difficulty functioning in these [mental health] areas."  (*Id.*).

Proceeding to step four, the ALJ concluded that Rodriguez retained the residual functional capacity to engage in light work.  (AR 679).  He acknowledged that Rodriguez "has severe physical conditions that cause some limitations in functioning," but believed the record lacked "corroborative clinical objective evidence consistent with the degree of limitation alleged by the claimant."  (AR 680, 683).  In short, while Rodriguez "is certainly limited in functioning to some degree, it is not to the degree alleged."  (AR 683).  The ALJ's RFC analysis, while extensive, did not specifically address the impact of Rodriguez's mental impairments.

Based on his RFC assessment, the ALJ further concluded that Rodriguez could perform her past relevant work as a medical billing clerk and as a cashier, both of which he stated were semi-skilled jobs requiring light or sedentary work.

(AR 684).  Hence, the ALJ found that Rodriguez was not disabled and denied her

application for both SSD and SSI benefits.  (*Id*.).

### 5.  Rodriguez's First Application for Judicial Review

In her brief in this Court seeking to overturn the 2018 ALJ Decision,

Rodriguez argued: (1) that the ALJ's RFC determination was not supported by

substantial evidence because he improperly weighed the opinion evidence of the

medical doctors; and (2) that the ALJ's RFC determination erroneously failed to

incorporate Rodriguez's medically determinable mental impairments of major

depressive disorder and generalized anxiety order.  (*Rodriguez v. Commissioner*, 20

Civ. 2183 (PED), Dkt. No. 19).  As noted above, after Rodriguez filed her brief, the

Commissioner consented to a remand for further administrative proceedings,

pursuant to the fourth sentence of 42 U.S.C. § 405(g).  (*Id.*, Dkt. No. 25).  The

Commissioner also stipulated to an award of Plaintiff's attorney's fees, pursuant to

the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  (*Id.*, Dkt. Nos. 27, 33).

Following remand, the Appeals Council issued an order on October 20, 2021,

(AR 708-11), vacating the 2018 ALJ Decision and remanding for resolution of the

following issue:

> The decision did not contain a sufficient evaluation of the claimant's
> alleged mental impairments. The decision found the claimant had no
> severe mental impairments and the assessed residual functional
> capacity (RFC) contained no mental limitations (Dec., p.3 and 8). In
> making these findings, the decision rejected the medical opinions from
> the treating psychotherapist, the psychiatric consultative examiner,
> and the State agency psychological consultant (Dec., p.4-6). These
> opinions founds the claimant had mental impairments resulting in
> moderate limitations in all four areas of functioning. This assessment
> was deficient because it was not supported by any medical source

14

opinion. Also, while the 'B criteria' indicated the mental impairments
were nonsevere, the assessed RFC should have accounted for both
severe and nonsevere impairments. The decision's step 2 findings and
assessment of the RFC were not legally sufficient because the decision
did not identify medical source opinions to support the assessment of
the B criteria and did not explain how the RFC accounted for all of the
claimant's severe and nonsevere impairments.

(AR 709).

The Appeals Council directed the ALJ, on remand, to: (1) give further

consideration to the treating, non-treating, and non-examining source opinions and

explain the weight given to these opinions; (2) further evaluate Rodriguez's mental

impairments in accordance with the "special technique" described in 20 CFR

§§ 404.1520a and 416.920a and provide specific findings and appropriate rationale

for each of the four Paragraph B functional areas; and (3) give further consideration

to Rodriguez's maximum RFC and provide appropriate rationale with specific

references to evidence of record in support of the assessed limitations.  (AR 710).

### 6.  Additional Mental Health Evidence on Remand

On remand, Rodriguez continued to claim and to present evidence of a mental

health disability as well as a physical disability.  (*See* AR 843-51).

### a.     Ryan Health Progress Notes: 2018 and 2019

Sometime in mid-2018, Rodriguez's therapist at the Roberto Clemente Center

left.  (AR 1158).  On October 17, 2018, she made an appointment at Ryan Health

NENA on the Lower East Side and sought a mental health referral.  (AR 1226).

Ryan Health administered a PHQ-9 test.  Rodriguez scored a 25, indicating "Severe

Depression," based on her report that nearly every day she felt little interest or

pleasure in doing things, felt depressed and hopeless, had trouble sleeping, felt like she was a failure, had trouble concentrating, and had thoughts that she would be better off dead or of hurting herself.  (*Id*.).

The following week, on October 22, 2018, Rodriguez saw a licensed social worker at Ryan Health, Maria Ramos, who administered another PHQ-9 test.  This test yielded a similar result: a high score of 23, still indicating Severe Depression.  (AR 1225).  Ramos also administered a GAD-7 test, which measures anxiety.  Rodriguez's GAD-7 score of 19 showed she had "severe" anxiety.  (*Id*.).[6]  Ramos' assessment was that Rodriguez was experiencing a "[s]evere episode of recurrent major depressive disorder, without psychotic features."  (AR 1160).  At the same time, Ramos recorded that (1) Rodriguez was oriented as to person, place, and time; (2) her focus, insight, and judgment were good, and (3) she showed no evidence of a thought disorder or delusions.  (*Id*.).[7]

Rodriguez began therapy with Ramos on October 31, 2018.  (AR 1224).  On November 15, 2018, her PHQ-9 score was down, indicating only "Moderate Depression," but her GAD-7 exam still showed "Severe" anxiety.  (AR 1223).  In January 2019, her PHQ-9 test results climbed back into the "Severe Depression" range (with scores of 21 and 23), and she continued to show "Severe" anxiety on the GAD-7 test.  (AR 1221, 1222).  At a therapy session on January 25, 2019, Rodriguez

---

[6] "A GAD-7 questionnaire is a screening tool for anxiety.  A GAD-7 score of 5 to 9 indicates mild anxiety; 10 to 14 indicates moderate anxiety; and over 15 indicates severe anxiety."  *Amparo v. Commissioner*, No. 20 Civ. 10285 (JMF) (SDA), 2022 WL 3084482, at *2 n.4 (S.D.N.Y. July 19, 2022) (citation omitted).

[7] Although these October 17 and October 22 assessments took place before the ALJ issued his initial decision on October 29, 2018, they were not part of the record before the ALJ at that time.

told Ramos that "she is depressed but is not sure why." (AR 1149). Rodriguez reported that "she likes being at home and has little or no[] interaction with peers" and that her daughter was "the only per[son] she speaks with." (*Id.*).

### b. Evaluations by Dr. Ocasio

Complaining of depression, Rodriguez was seen on April 1, 2019 by Dr. Oscar Ocasio, a clinical psychologist at the Roberto Clemente Center. (AR 874-75). Dr. Ocasio diagnosed her with bipolar II disorder. (*Id.*). Dr. Ocasio saw Rodriguez three more times in April and May 2019. (AR 864-73). Assessing her mental health, Dr. Ocasio wrote that Rodriguez was alert and oriented; her range of attention/concentration was within normal limits; she had a coherent and goal-directed thought process; and showed appropriate judgment but limited insight and mild impulse control. (AR 866, 872).

At the same time, Dr. Ocasio said that Rodriguez had a "Chronic Mental [H]ealth Il[l]ness" and would benefit from therapy and psychiatric medication to reduce and manage her depression and anxiety. (*Id.*).

### c. Ryan Health Progress Notes: 2020 to 2022

Rodriguez's mental health condition appears to have improved after that point. Progress notes in October 2020 and April 2021 by Dr. Phillip R. Martinez (who does not appear to be a psychiatrist or psychologist) indicate, respectively, that Rodriguez had a PHQ-9 score of zero and "no depression." (AR 1214, 1211).[8] While those data points may be outliers, progress notes from a July 2021 appointment

---

[8] Rodriguez stopped psychotherapy treatment when the COVID-19 pandemic began. (AR 1231). She had resumed treatment by the time of the second ALJ hearing in August 2022. (AR 659).

indicate a PHQ-9 score of only 15, indicating "Moderate Depression," and an assessment that Rodriguez's depressive disorder was in "remission." (AR 1112, 1119, 1210).

In May 2022, Rodriguez's PHQ-9 score was only 10 (also "Moderate Depression"). (AR 1170). While continuing to report depression, trouble sleeping, and some thoughts of hurting herself, at this point Rodriguez was not claiming she had little interest or pleasure in doing things, felt like she was a failure, or was having trouble concentrating. (*Id.*).

### d. Neurological Examination by Dr. Revan

Dr. Sharon Revan, a neurologist, conducted a consultative examination of Rodriguez at the request of the SSA in June 2022. (AR 852-55). Regarding Rodriguez's mental status, Dr. Revan found that she appeared oriented in all spheres; showed no evidence of delusions, hallucinations, significant memory impairment, or impaired judgment; displayed an appropriate affect and mood; and denied suicidal or homicidal ideation. (AR 853).

### e. Consultative Examination by Dr. Sprung

Dr. Abrah Sprung, a psychologist, performed a consultative psychiatric examination of Rodriguez in July 2022. (AR 1231-38). Rodriguez continued to claim she was unable to work due to her medical and mental health problems, citing some of the same symptoms she had been reporting since 2015: difficulty sleeping, difficulty concentrating, irritability, avoidance of social settings, and "feel[ing] so

anxious she gets out of breath." (AR 1231-32). Rodriguez had a home attendant twenty hours per week to help her with cooking, cleaning, and shopping. (AR 1233).

In her assessment of Rodriguez's mental ability to perform work-related activities, Dr. Sprung found, across the board, that Rodriguez's abilities were impaired by her depression and anxiety in her ability to (1) understand, remember, and carry out instructions; (2) interact appropriately with supervisors, co-workers, and the public; and (3) concentrate, persist, and maintain pace. (AR 1236-37). She also found, across the board, that Rodriguez's impairment in these areas was only "mild." (*Id.*). Dr. Spring concluded: "The results of the examination appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with [Rodriguez's] ability to function on a daily basis." (AR 1234).

Significantly, the SSA form on which Dr. Sprung recorded her assessment states: "The limitations above are assumed to be your opinion regarding *current limitations only*." (AR 1237 (emphasis added)). Dr. Sprung left unanswered a question that appears immediately below that statement asking if she had formed an opinion as to the claimant's "past limitations." (*Id.*). Nothing in Dr. Sprung's report indicates that she reviewed the prior psychiatric and psychological examinations of Rodriguez or reached any opinion as to the nature or severity of Rodriguez's mental health impairments prior to 2022.

### 7.  The 2022 Administrative Hearing

On August 8, 2022, a remand hearing was held before ALJ Grossman.  (AR 652).  By that time, Rodriguez was 63 years old and had been collecting social security for a year.  (AR 655).  Rodriguez testified that she was seeing a psychiatrist but not taking any psychiatric medicine.  (AR 659).  When the ALJ asked why she was unable to work, she testified that she was unable to stand for long periods of time, that she got fatigued after walking eight blocks, that her hands were always cramped up because of her rheumatoid arthritis, that she constantly had headaches, and that "I don't see myself being able to comply with an . . . employer for eight hours a day.  I really can't."  (AR 659-60).

Rodriguez's counsel did not elicit any testimony from her.  (AR 663-64).  He did, however, remind the ALJ there were three opinions in the record from the 2018 hearing indicating that Rodriguez's mental health impairments would limit her to unskilled work.  (AR 661).  Counsel stated that this was the "real[] . . . issue," because if Rodriguez was limited to unskilled work, "[s]he would have gridded out back then."  (*Id*.).  Counsel acknowledged that "the more recent CE," *i.e.*, Dr. Sprung's consultative examination, indicated only mild impairments, but pointed out that "mental health can fluctuate."  (*Id*.).

No medical expert testified at the hearing.  An impartial vocational expert testified that, despite her postural limitations, the limitations on use of her hands, and her use of a cane, Rodriguez would be able to perform her past relevant work as

a medical biller and receptionist.  (AR 664-68).  The expert confirmed that this was a sedentary, semi-skilled job (SVP 4).  (AR 664-65, 668).

### 8. The 2022 ALJ Decision

ALJ Grossman issued his decision on remand on August 18, 2022. (AR 628-45).  He again found, at step one, that Rodriguez had not engaged in substantial gainful activity since the alleged onset date of November 27, 2015.  (AR 631).  He also found again, at step two, that Rodriguez suffered from several severe physical impairments: rheumatoid arthritis, vertigo, hypertension, upper and lower back pain, hypothyroidism, chronic kidney disease, pituitary tumor, and obesity. (*Id.*).[9]  And, as in his 2018 decision, the ALJ again concluded at step three that Rodriguez's physical impairments did not meet or equal any of the listed impairments in 20 CFR § 404, subpt. P, app. 1.  (AR 636-37).

The ALJ likewise adhered to his earlier determination that Rodriguez's medically determinable mental impairments (which he noted included bipolar disorder as well as depression and anxiety) "do not cause more than minimal limitation[s]" in her ability to perform basic work activities and are, therefore, "nonsevere."  (AR 631).  In reaching this conclusion, the 2022 ALJ Decision discussed some of the additional evidence bearing on Rodriguez's mental health that was received after the 2018 ALJ Decision, including Maria Ramos' assessment in November 2018, Dr. Ocasio's mental status examinations in April and May 2019, and Dr. Sprung's consultative examination in July 2022.  (AR 632).  The ALJ gave

---

[9] These conditions include some, but not all, of the severe physical impairments found in the 2018 ALJ Decision, and include others not found in the 2018 ALJ Decision.

"significant weight" to Dr. Sprung's opinion, noting that Dr. Sprung examined Rodriguez in person.  (AR 634).  The ALJ found Dr. Sprung's opinion to be "well-supported by, and consistent with," the substantial evidence of record "clearly establishing no more than a minimal degree of restriction due to the claimant's mental impairments."  (*Id.*).

The ALJ also revisited the mental health opinions that had been rendered prior to the 2018 Decision, again according—and for essentially the same reasons— "partial weight" to Dr. Kushner's and Dr. Brown's opinions and "little weight" to Ms. Jimenez's opinion.  (AR 633-34).  The ALJ also reviewed each of the four "paragraph B" criteria, concluding, as he had four years earlier, that Rodriguez's mental health impairments caused only a "mild limitation" in each area. (AR 635-36).

The ALJ's RFC analysis at step four found that Rodriguez was able to perform the full range of "sedentary" work, in contrast to his 2018 RFC finding that she could meet the more taxing demands of "light" work.  (AR 637).  The ALJ's extensive RFC analysis focused entirely on the medical evidence relating to Rodriguez's physical impairments, the only type of impairments he found severe. (AR 637-44).  However, the ALJ also expressly stated that his RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."  (AR 636).  Although recognizing that Rodriguez "may experience some limitation of activity due to her physical impairments," the ALJ found that the objective medical evidence "simply does not establish physiological or

psychological abnormalities which would limit the claimant's daily activities to the degree alleged." (AR 644).

Based on his RFC assessment, and considering "the physical and mental demands" of Rodriguez's past relevant work as a medical billing clerk, the ALJ found that Rodriguez "is able to perform [that work] as actually and generally performed." (AR 645). The ALJ thus concluded that Rodriguez has not been under a disability "from November 27, 2015, through the date of this decision." (*Id.*).

## LEGAL STANDARDS

### A. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). The district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by "substantial evidence." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (cleaned up).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." *DeJesus v.*

*Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (cleaned up). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Conklin v. Kijakazi*, No. 21 Civ. 8486 (JLC), 2023 WL 104829, at *7 (S.D.N.Y. Jan. 5, 2023) (quoting *Brault*, 683 F.3d at 448).

In weighing whether substantial evidence supports the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (citation omitted). Based on this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g). However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence." *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted).

## B. Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also*

24

*Colgan v. Kijakazi*, 22 F.4th 353, 357 (2d Cir. 2022).  Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

"The Social Security Administration has outlined a five-step, sequential evaluation process to determine whether a claimant is disabled."  *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (cleaned up); *see* 20 C.F.R. § 404.1520(a)(4). The steps are followed in order; if it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not progress to the next step.  *Manzanares v. Comm'r of Soc. Sec.*, No. 22 Civ. 1898 (SN), 2023 WL 4350651, at *4 (S.D.N.Y. July 5, 2023).  The Second Circuit has described the five-step process as follows:

> *First*, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner *next* considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the *third* inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the *fourth* inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity ["RFC"] to perform her past work. *Finally*, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (emphasis added); *see* 20 C.F.R.
§ 404.1520(a)(4)(i)-(v).

The claimant bears the burden of proof as to steps one through four; the
Commissioner bears the burden as to step five. *See Manzanares*, 2023 WL 4350651,
at *4 (citing *Selian*, 708 F.3d at 418).

## C. Evaluation of Mental Impairments

When an alleged mental impairment is at issue, the regulations mandate use
of a "special technique" in evaluating the severity of the impairment at steps two
and three. 20 C.F.R. § 404.1520a(a); *see Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir.
2008). Under this technique, the Commissioner must "'rate the degree of [the
claimant's] functional limitation based on the extent to which [her] impairment(s)
interferes with [her] ability to function independently, appropriately, effectively,
and on a sustained basis.'" *Rosario v. Kijakazi*, No. 20 Civ. 5490 (JPC) (BCM), 2022
WL 875925, at *11 (S.D.N.Y. Mar. 15, 2022) (quoting 20 C.F.R. § 404.1520a(c)(2)),
*adopted by* 2022 WL 976879 (S.D.N.Y. Mar. 31, 2022).

The special technique first requires the Commissioner "to assess the
claimant's degree of functional limitation resulting from a mental impairment in
four 'broad functional areas' identified in the 'paragraph B' of the adult mental
disorders listings." *Nunez v. Comm'r of Soc. Sec.*, No. 22 Civ. 9100 (MKV) (SDA),
2024 WL 474045, at *20 (S.D.N.Y. Jan. 8, 2024) (citing 20 C.F.R. § 404.1520a(c)(3)).
Those four functional areas are the claimant's ability to (1) "[u]nderstand,
remember, or apply information;" (2) "interact with others;" (3) "concentrate,

persist, or maintain pace;" and (4) "adapt or manage oneself."  20 C.F.R.

§ 404.1520a(c)(3).  The Commissioner uses a five-point scale to rate the degree of

limitation in each area: none, mild, moderate, marked, and extreme.  *Id.*

§ 404.1520a(c)(4).

These ratings are used at step two to determine whether the claimant's

mental impairment is severe.  If the degrees of limitation are considered to be

"none" or "mild," the Commissioner "will generally conclude" that the claimant's

impairment "is not severe."  *Id.* 404.1520a(d)(1).  However, "those rated as

'moderate,' 'marked,' or 'extreme' will qualify as 'severe' under step two, thus

requiring [the ALJ] to proceed to the third step in the sequential process."

*Schafenberg v. Saul*, 858 F. App'x 455, 456 (2d Cir. 2021).

To meet or medically equal a listed mental impairment at step three, a

claimant must satisfy the "paragraph A" criteria for that disorder, that is, "the

medical criteria that must be present in [the claimant's] medical evidence," as well

as either the "paragraph B" criteria or the "paragraph C" criteria.  *Rosario*, 2022

WL 875925, at *11 n.9 (citing 20 C.F.R. Part 404, subpt. P, app. 1 § 12.00A(2)(a)-

(c)).  To satisfy the "paragraph B" criteria, the claimant must demonstrate "an

extreme limitation of one, or a marked limitation of two," of the same four broad

functional areas described in 20 C.F.R. § 404.1520a(c)(3).  *Id.* (citing, as an

example, 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04B).  To satisfy the "paragraph C"

criteria, the claimant must demonstrate that her mental disorder is "serious and persistent." *Id.* (citing, as an example, 20 C.F.R. pt. 404, subpt. P, app. 1 § 2.04C).[10]

## D.  Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Conklin*, 2023 WL 104829, at *9 (citation omitted); *see* 20 C.F.R. §§ 404.1527(c), 416.927(d).  Not every medical opinion is assigned the same weight, however. *Wasserman v. Kijakazi*, No. 20 Civ. 3482 (VB) (AEK), 2022 WL 2532181, at *13 (S.D.N.Y. Mar. 17, 2022).  For claims filed before March 27, 2017, "the opinions of a treating source as to the nature and severity of a claimant's impairments are generally, but not always, entitled to 'more weight' relative to those from other treatment providers." *Id.* (citing 20 C.F.R. § 404.1527(c)(2) and *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995)).[11]  Such opinions are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the record.  *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)).  Conversely, opinions from treating

---

[10] To show a "serious and persistent" disorder, the claimant must demonstrate that she has "a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: (1) [m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [her] mental disorder ... *and* (2) [m]arginal adjustment, that is, [the claimant has] minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life[.]" *Id.* (citing, as an example, 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04C) (emphasis in original).

[11] This so-called "treating source rule" was modified for social security disability claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  Because Plaintiff filed her claim on January 15, 2016, the Court applies the treating source rule and other rules for evaluating opinion evidence as set forth in 20 C.F.R. § 404.1527.

sources need not be given controlling weight where they are contradicted by, or inconsistent with, other substantial evidence in the record.  *Id.*

When a treating source's opinion is not given controlling weight, the ALJ must still consider various factors in determining the amount of deference to assign to that opinion.  These factors include: (i) whether the treating source examined the claimant; (ii) the length, nature, and extent of the treatment relationship; (iii) the extent to which the medical source provides relevant evidence to support an opinion ("supportability"); (iv) the extent to which the opinion is consistent with the record as a whole ("consistency"); (v) whether the opinion is given by a specialist; and (vi) other factors which may be brought to the attention of the ALJ.  *See* 20 C.F.R. §§ 404.1527(c)(1), (c)(2)(i)-(ii), (c)(3)-(c)(6); *see Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).  While the ALJ need not provide a "recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear," *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013), the ALJ must "always give good reasons in [his or her] notice of determination or decision for the weight [he or she] give[s] [a claimant]'s treating source's opinion," 20 C.F.R. § 404.1527(c)(2), and must "comprehensively set forth reasons for the weight" ultimately assigned to the treating source, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

"'An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case.'"  *Conklin*, 2023 WL 104829, at *10 (quoting *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020)).  "However, the Court need not remand the case if the ALJ only committed

harmless error, *i.e.*, where the 'application of the correct legal principles to the record could lead only to the same conclusion.'" *Id.* (quoting *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)).

## DISCUSSION

Plaintiff argues that the 2022 ALJ Decision erred at step two in finding that her mental health impairments are not severe. She claims that this finding is not supported by substantial evidence and that the ALJ improperly rejected the opinions of the treating source and other doctors that her mental limitations were more than mild. (Br. at 11-19). Further, Rodriguez argues that the ALJ's step four finding that Rodriguez can perform her past relevant work is erroneous because her mental impairments limited her to unskilled work. She contends that, had the ALJ properly considered her mental health limitations, he would have found her disabled under the SSA Grid Rules. (*Id.* at 11-13, 20).

The Commissioner defends the ALJ's step two analysis regarding Rodriguez's mental impairments and argues that the analysis is supported by substantial evidence. (Opp. at 12-20). The Commissioner also argues that any error in the ALJ's step two analysis is harmless because, having found severe physical impairments, the ALJ proceeded to steps three and four and properly found that Rodriguez can perform her past relevant work despite her mental impairments. (*Id.* at 20-21).

For the reasons set forth below, the Court concludes that the ALJ erred to the extent he found at step two that Rodriguez's mental impairments were non-severe

during the period from 2015 to in or about 2018.  The Court further concludes that this error is not harmless and a remand for further proceedings is necessary to consider whether, in light of her severe mental impairments, Rodriguez was not capable of performing her past relevant work and, thus, was disabled during this period.

### A.  The ALJ's Step Two Analysis Was Flawed

This case returns to this Court after the agreed-upon remand of the 2018 ALJ Decision.  The Appeals Council concluded that the ALJ's step two finding—that Rodriguez had only "mild" limitations in mental functioning under the paragraph B criteria and no severe mental impairments—was "deficient" and "not legally sufficient."  (AR 709).  This was so, the Appeals Council explained, because the ALJ rejected the medical opinions finding that Rodriguez had "moderate" limitations in mental functioning without "identify[ing] any medical source opinions" to support that assessment.  (*Id*.).  The Court must, therefore, decide whether the 2022 ALJ Decision cured these deficiencies.

#### 1.  Disability as of 2022

To the extent the ALJ found Rodriguez's mental impairments to be non-severe at the time of the 2022 ALJ Decision, substantial evidence supports that determination.  In particular, Dr. Sprung, who conducted an in-person consultative examination of Rodriguez in July 2022, found that Rodriguez's impairments in each of the four functional areas covered by the paragraph B criteria were only "mild." (AR 1236-37).  The ALJ gave significant weight to Dr. Sprung's opinion in reaching

his determination that Rodriguez's mental impairments were only mild and non-severe. (AR 634-35). The ALJ was entitled to do so. *See, e.g.*, *Hutchings v. Berryhill*, No. 18 Civ. 1921 (PAE) (KHP), 2019 WL 5722478, at *11-12 (S.D.N.Y. June 28, 2019) (ALJ entitled to rely on opinion of consultative examiner).

Although an ALJ is "'generally' required to weigh th[e] opinion [of a treating source] more heavily than the opinion of a consultative examiner," *Moscatello v. Saul*, No. 18 Civ. 1395 (BCM), 2019 WL 4673432, at *12 (S.D.N.Y. Sept. 25, 2019) (quoting 20 C.F.R. § 416.1927(c)(1)-(2)); *see also Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (cautioning that "ALJs should not rely heavily on the findings of consultative physicians after a single examination"), in this case the only opinion from a treating source, Ms. Jimenez, dates back to June 2018, four years before Dr. Sprung's examination. Indeed, although Rodriguez testified at the hearing that she was seeing a psychiatrist (AR 659), she did not present any evidence from that psychiatrist or of any mental health treatment she received after 2020.

Thus, in contrast to his 2018 ALJ Decision, the ALJ's step two assessment of Rodriguez's mental impairments as of the time of the 2022 ALJ Decision is properly supported by the opinion of a qualified medical source. This assessment does not suffer from the same deficiencies that undermined the 2018 ALJ Decision. Accordingly, the Court finds no basis to overturn the ALJ's finding that Rodriguez's mental impairments were non-severe at the time of the 2022 ALJ Decision.

### 2. Disability as of 2018

That does not, however, end the Court's analysis.  Nearly seven years elapsed between the alleged onset of disability (November 27, 2015) and the 2022 ALJ Decision (August 18, 2022).  Rodriguez's mental condition as of the 2018 ALJ Decision may not have been the same as her condition as of the time of the 2022 ALJ Decision.  *See, e.g.*, *New v. O'Malley*, No. 23 Civ. 643, 2024 U.S. App. LEXIS 7108 (2d Cir. Mar. 26, 2024) (affirming ruling that claimant's depressive and anxiety disorders were severe during a part of the period of alleged disability but non-severe during another part).

An ALJ "should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period . . . following the date of [Plaintiff's] claim." *Williams v. Kijakazi*, No. 20 Civ. 8469 (JLC), 2022 WL 799478, at *10 (S.D.N.Y. Mar. 16, 2022) (cleaned up).  Such a "'closed period' of disability" exists when a claimant is found "to be disabled for a finite period of time which began and ended prior to the date of the agency's administrative determination of disability." *Milliken v. Saul*, No. 19 Civ. 9371 (PED), 2021 WL 1030606, at *9 (S.D.N.Y. May 17, 2021).  Yet here, the ALJ did not explicitly consider in 2022 whether Rodriguez's mental impairments were severe as of 2018, despite the Appeals Council's remand order strongly suggesting this was the case.

"[T]he standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases."

*McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014); *see also Santiago Sanchez v. Comm'r of Soc. Sec.*, No. 20 Civ. 7653 (LJL), 2022 WL 3152585, at *5 (S.D.N.Y. Aug. 8, 2022) ("The threshold for demonstrating a severe impairment [at step two] is low."). Here, the record contains considerable evidence showing that Rodriguez's mental impairments as of 2018 passed the relatively low bar to qualify as "severe."

Ms. Jimenez, considered the treating source as Rodriguez's psychotherapist, found Rodriguez had significant mental impairments and no useful ability to function in several areas. (AR 458-59). Dr. Brown, the State agency consultant, found her moderately limited in numerous areas and characterized her depressive disorder as severe. (AR 97-98). Dr. Vilario-Colon found Rodriguez to be severely depressed at his August 2016 exam. (AR 481-82). Even Dr. Kushner, whose consultative examination is most favorable to the Commissioner, found that Rodriguez had up to moderate limitations in certain areas of mental functioning. (AR 294).

Rodriguez was initially diagnosed with major depressive disorder, as well as anxiety disorder, and her high PHQ-9 score of 26 indicated "Severe Depression." (AR 310-11; *see also* AR 420). She reported suicidal ideation and the doctor who examined her felt she was "at high risk." (AR 310). While her symptoms varied from time to time, progress notes from 2015 to 2018 recount regular feelings of hopelessness, worthlessness, overwhelming sadness, sleeplessness, irritability, unexplained crying spells, emotional and physical abuse by her partner, a desire for social isolation and not wanting to get out of bed, and, at times, suicidal and

34

homicidal ideation.  (AR 460-61, 465-66, 468, 473, 477, 480, 485, 488-89, 491, 493, 496, 499-500, 505, 509, 511, 513).

Against the backdrop of this evidence, the Appeals Council concluded that the ALJ had not adequately explained in his 2018 Decision how he could have found Rodriguez's mental limitations to be merely "mild" and non-severe.  The ALJ did not provide a better or more convincing explanation in his 2022 Decision.  For the most part, the ALJ reiterated the same reasons he had cited previously for giving "little" or only "partial" weight to the opinions of Ms. Jimenez, Dr. Brown, and Dr. Kushner.  (*Compare* AR 675-77 *with* AR 631-34).  He also largely relied on the same reasons for finding Rodriguez's limitations in each of the four paragraph B areas to be "mild" rather than "moderate" as found by the medical opinions of record.  (*Compare* AR 677-78 *with* AR 635-36).

To be sure, the ALJ did rely on one item of new evidence: Dr. Sprung's consultative examination in July 2022.  But Dr. Sprung's evaluation was expressly confined to Rodriguez's "current limitations" as of July 2022.  (AR 1237).  She did not even purport to evaluate the severity of Rodriguez's impairments during the period from 2015 to 2018.  (*See id*.).  Therefore, as a matter of logic, Dr. Sprung's evaluation cannot remedy the deficiencies in the 2018 ALJ Decision as noted in the Appeals Council's remand order.  Rodriguez makes this very point in her brief in this Court.  (Br. at 20-21).  Notably, the Commissioner offers no response.  *See, e.g.*, *Vann v. Persico*, No. 20 Civ. 628 (KMK), 2022 WL 4368110, at *9 (S.D.N.Y. Sept. 20,

2022) (by "failing to respond" to plaintiff's argument in its reply brief, defendant "concedes the point" for purposes of the motion).

Other evidence introduced into the record after the 2018 ALJ Decision confirms that, while Rodriguez may have been only mildly impaired as of 2022, she suffered from at least moderate limitations in 2018. Additional PHQ-9 testing in October 2018 and January 2019 continued to show high scores indicative of "Severe Depression." (AR 1221-22, 1225-26). Her scores on the GAD-7 test during this time also showed she suffered from "severe" anxiety. (AR 1221-23, 1225). Her symptoms remained generally the same and Maria Ramos, the social worker who examined her in October 2018, felt she was experiencing a "[s]evere episode of recurrent major depressive disorder." (AR 1160; *see also* AR 1226).

In defending the ALJ's step two determination in his 2022 Decision that Rodriguez's mental impairments were non-severe, the Commissioner likewise relies on Dr. Sprung's opinion, which, as noted above, does not speak to Rodriguez's condition as of 2018. (*See* Opp. at 13-14). Otherwise, the Commissioner regurgitates the ALJ's own reasoning for rejecting the opinions of Ms. Jimenez, Dr. Brown, and Dr. Kushner, which in turn essentially echoed the ALJ's reasoning in his 2018 Decision. (*See id.* at 14-20). But by consenting to a remand of the 2018 ALJ Decision (and to an award of attorney's fees to Plaintiff's counsel under the EAJA), the Commissioner has already acknowledged the legal inadequacy of that reasoning. *See Shalala v. Schaefer*, 509 U.S. 292, 310 (1993) ("a court's order to remand a case pursuant to sentence four of § 405(g) necessarily means that the

36

[Commissioner] has committed legal error") (Stevens, J., concurring); *Dacosta-Lima v. Astrue*, No. 3:11-cv-777-J-32TEM, 2012 WL 177398, at *1 (M.D. Fla. Jan. 23, 2012) ("having requested the remand to the Commissioner and having consented to the EAJA petition, the government has impliedly admitted that its position was not substantially justified").

Further, the Appeals Council's 2018 remand order established that the ALJ's reasoning was deficient and directed the ALJ to "[g]ive further consideration" to the treating and non-treating source opinions and "[f]urther evaluate [Rodriguez's] mental impairments" in accordance with the special technique. (AR 709-10). "ALJs are required to follow the directives of the Appeals Council" on remand. *Jeremy B. v. Comm'r of Soc. Sec.*, No. 2:18-cv-159-jmc, 2019 WL 3297471, at *7 n.4 (D. Vt. July 23, 2019); *see Gittens v. Astrue*, No. 12 Civ. 3224 (NSR) (GAY), 2013 WL 453213, at *7 (S.D.N.Y. Aug. 26, 2013) (an "ALJ's failure to comply with the Appeals Council's order upon remand constitutes legal error"). The ALJ here cannot be said to have complied with the Appeals Council's directives by merely repeating the same reasoning found deficient by the Appeals Council's remand order.

Even if the inadequacy of the ALJ's reasoning were not already conclusively established, the Court would independently reach the same conclusion. It is evident, as the Appeals Council's remand order suggests, that the ALJ did not give sound reasons for rejecting the medical evidence from both the treating and non-treating sources that Rodriguez's mental impairments were more than "mild."

For example, the ALJ's paragraph B analysis relied significantly on statements made in Rodriguez's function report, dated February 8, 2016.  (*See* AR 193-201 (Ex. 6E)).  According to the ALJ, Rodriguez's statements in that report that she could prepare simple meals, shop, take public transportation, manage money, and spend time with others showed that her limitations were merely mild.  (AR 635).  Further, the ALJ asserted that, because Rodriguez checked boxes indicating that she could follow written and spoken instructions, this meant she had "no significant limitations in paying attention or completing tasks."  (*Id.*).  But it was improper to view these statements by Rodriguez as outweighing the assessments of Ms. Jimenez, Dr. Brown and Dr. Kushner that Rodriguez had moderate limitations in her ability to maintain attention and concentration, to carry out detailed or complex instructions, and to relate to others and deal with stress in the work context.  (AR 97-98, 294, 458-59).  *See, e.g., Campbell v. Saul*, No. 19 Civ. 181 (PAE) (JLC), 2020 WL 486862, at *23-24 (S.D.N.Y. Jan. 30, 2020) (finding error in ALJ's reliance on "his own interpretations of [claimant's] self-authored function report" to conclude that claimant "was no more than mildly limited in any of the areas of functioning" when the medical opinion evidence indicated more severe limitations; ALJ cannot "substitute[] his own judgment for competent medical opinion") (citation omitted).

Similarly, the ALJ stated that Rodriguez's mental status exams "typically" showed "mild findings" and did not demonstrate "persistent acute abnormalities or deficits of behavior of cognition."  (AR 634).  But that characterization ignores the

ample and, if anything, more "typical" indications in the mental status exams and progress notes that Rodriguez suffered from more serious impairments, as noted above. *See, e.g.*, *Campbell*, 2020 WL 486862, at *24 (ALJ's "passing, cherry-picked references to [claimant's] mental health treatment notes" were insufficient to support ALJ's finding that her mental health impairments were non-severe).

If the ALJ's finding that Rodriguez's mental impairments were mild and non-severe were before the Court for the first time, a remand for further development of the record would be appropriate, as was the case when the 2018 ALJ Decision was remanded. But a *second* remand for further proceedings with respect to step two would be manifestly inappropriate, given that more than eight years have passed since Rodriguez first filed her claim and given that the ALJ was already given an opportunity to cure the deficiencies in his 2018 analysis and failed to do so. *See Steficek v. Barnhart*, 462 F. Supp. 2d 415, 421 (W.D.N.Y. 2006) (declining to remand for further proceedings where Commissioner "has already had one opportunity to correct the errors that occurred in connection with the first hearing" and ALJ "committed the exact same errors the second time around").

Accordingly, the Court determines that, to the extent the ALJ found Rodriguez's mental impairments were non-severe during the period from 2015 to 2018, that finding is not supported by substantial evidence. Rodriguez has satisfied her burden to demonstrate that her mental impairments during that period were "severe" under the applicable legal standard. *See, e.g.*, *Smith v. Berryhill*, No. 17 Civ. 5639 (PAE) (SN), 2018 WL 5619977, at *12 (S.D.N.Y. Aug. 10, 2018) ("even if

substantial evidence supports a finding that [plaintiff's] symptoms improved before the ALJ issued her decision, at which time she was no longer disabled, it was legal error—on this record—for the ALJ not to consider a closed period of disability following the alleged disability onset date"), *adopted by* 2018 WL 4565144 (S.D.N.Y. Sept. 24, 2018).

## B.  The ALJ's Error Is Not Harmless

An ALJ's error at step two, in failing to find alleged mental impairments to be severe, may be harmless where the ALJ finds severe physical impairments and proceeds to conduct an RFC analysis at step four that considers the alleged mental impairments.  *See, e.g.*, *Rivera v. Colon*, 592 F. App'x 32, 33-34 (2d Cir. 2015); *De Camacho v. O'Malley*, No. 22 Civ. 7779 (RWL), 2024 WL 687286, at *12 (S.D.N.Y. Feb. 20, 2024) ("even assuming that major depressive disorder generally should be considered severe, any error in that respect was nonetheless harmless because, in formulating [plaintiff's] RFC, the ALJ explicitly considered the extent of any functional limitations posed by [her] mental impairments").

However, such an error is not harmless where there is "no discernible basis" for the court to conclude that the ALJ "factored [the non-severe mental impairments] or its functional effects into [the] ultimate [RFC] determination." *Snyder v. Colvin*, No. 5:13-cv-585 (GLS/ECH), 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014).  The critical question is whether it can be said that the step two error "had no effect on the ultimate disability determination."  *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014); *see also Emerson v. Comm'r of Soc. Sec.*, No. 12

Civ. 6451 (PAC) (SN), 2014 WL 1265918, at *14 (S.D.N.Y. Mar. 27, 2014) (error not harmless where "[t]he Court cannot determine whether the ALJ would have made the same RFC determination if he had accurately valued [plaintiff's] back pain as severe").

The Commissioner argues that any error at step two was harmless because the ALJ "discussed any limitations stemming from [Rodriguez's mental health] impairments at the subsequent steps." (Opp. at 19 (citing AR 636-45)). But that is not so. Although the ALJ discussed Rodriguez's mental health impairments extensively at step two of his analysis (AR 631-36), he did not discuss them at all at the subsequent steps. The ALJ's step three analysis was limited to Rodriguez's physical impairments and did not mention her mental impairments. (AR 636-37). More importantly, the ALJ's RFC assessment at step four, while covering nearly eight single-spaced pages, focuses entirely on Rodriguez's physical impairments. (AR 637-44). It contains only a single, glancing reference to Rodriguez's mental impairments. (*See* AR 644 (stating that the objective medical evidence "simply does not establish physiological or psychological abnormalities which would limit the claimant's daily activities to the profound degree alleged")).

Thus, while the ALJ stated at the end of his step two analysis that his RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" (AR 636), this seems to mean that, in his view, Rodriguez's mental impairments were so inconsequential as to be unworthy of any specific discussion in the RFC analysis. Such an analysis cannot properly form

the basis of a harmless error finding if, as noted above, Rodriguez's mental impairments were in fact severe as of 2018 (especially since the ALJ did not specifically assess Rodriguez's RFC as of 2018).  Nothing in the ALJ's RFC analysis indicates that he would have come out the same way if he had believed Rodriguez's mental impairments to be severe, rather than merely mild, during this period. Under these circumstances, it cannot be said that Rodriguez's mental impairments were "fully considered and factored into" the ALJ's RFC analysis, *Snyder*, 2014 WL 3107962, at *5, so as to warrant a finding of harmlessness.

The ALJ's step two error cannot be considered harmless for an additional, critical reason.  Because Rodriguez was more than 55 years old at the time she filed her disability claim, a different framework applies at steps four and five.  Under SSA regulations:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to *sedentary* or *light* work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work . . . that you can do despite your impairment(s). We will decide if you have transferable skills as follows. If you are of advanced age and you have a severe impairment(s) that limits you to no more than *sedentary* work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

20 C.F.R. § 404.1568(d)(4) (emphasis in original); *see Draegert v. Barnart*, 311 F.3d 468, 472-73 (2d Cir. 2002).  Thus, "a person of advanced age who is limited to sedentary or light work will be found unable to make an adjustment to other work unless that person has skills that can be transferred to other skilled or semiskilled

work that the person can still perform." *Madigan v. Kijakazi*, No. 19 Civ. 5725 (AEK), 2022 WL 909861, at *7 (S.D.N.Y. Mar. 29, 2022) (citation omitted).

The SSA's table of Medical-Vocational Guidelines, also known as the "Grid Rules," *see Draegert*, 311 F.3d at 473, provides that a claimant of advanced age who is at least a high school graduate, who previously held a skilled or semiskilled job, and who is now limited to sedentary and unskilled work due to severe medically determinable impairments must be found disabled if her job skills are not transferable. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Rules 201.00, 201.06. "In other words, under the agency's medical vocational guidelines 201.06, Plaintiff would be found to be disabled if she were limited to sedentary, unskilled work." *Petelle v. Berryhill*, No. 16 C 4208, 2017 WL 1208442, at *6 (N.D. Ill. Apr. 3, 2017); *see also Jones v. Astrue*, No. 08-CV-6433 CJS, 2009 WL 3871641, at *4-6 (W.D.N.Y. Nov. 18, 2009) (finding disabled a claimant of advanced age who was capable only of sedentary, unskilled work).

Here, the ALJ concluded, because of Rodriguez's physical impairments, that she only had enough RFC to perform sedentary work. (AR 637). He also concluded that Rodriguez could perform her past relevant work as a medical biller, which he described as a "sedentary, *semi-skilled*" job. (AR 645; emphasis added). However, there is evidence in the record that, due to Rodriguez's mental impairments, she was limited to *unskilled* work. Dr. Brown, the State agency consultant, specifically found that Rodriguez "retains the capability for the basic mental demands of unskilled work." (AR 99). In addition, Ms. Jimenez's medical assessment (although

43

it does not expressly address Rodriguez's ability to perform unskilled versus semiskilled/skilled work) contains findings—*e.g.*, that her ability to use judgment, maintain attention/concentration, and understand detailed instructions were so poor that she had no ability to function in these areas—that strongly suggest Rodriguez had the mental capability for unskilled work only.  (*See* AR 458-59).

If Rodriguez was limited to *unskilled* work during 2015 to in or about 2018 due to her severe mental impairments, then the ALJ's conclusion that she could perform her past relevant sedentary, *semiskilled* work as a medical biller unravels. In that event, her past relevant work as a medical biller would be precluded at step four, and unless she were deemed to have transferable job skills, she would be found disabled under Section 201.06 of the Grid Rules.[12]  As Rodriguez's attorney put it during the 2018 and 2022 hearings, she would, in the vernacular, "grid out." (AR 71, 661-62).  *See Petelle*, 2017 WL 1208442, at *6.

The Commissioner argues that the ALJ's step four analysis is supported by substantial evidence because the vocational expert at the 2022 hearing testified that Rodriguez could perform her past work as a medical biller.  (Opp. at 20).  This argument, however, is based on the same faulty premise rejected above—that "the ALJ properly rejected the providers' opinions that Plaintiff had anything more than mild mental limitations."  (*Id*.).  Rodriguez's severe mental impairments from 2015 to 2018 raise the prospect that she was limited to unskilled work and hence was not

---

[12] In her brief, Rodriguez incorrectly cites Section 201.14 of the Grid Rules.  (Br. at 11, 20).  That provision applies to persons who are approaching advanced age (age 50-54).  *See* Grid Rules, §§ 201.00(g), 201.14.  Rodriguez was already of "advanced age" (age 55 and over) when she applied for disability at age 56.  *See id*. § 201.00(f).  Hence, Section 201.06 is the applicable Grid Rule.

44

capable of semiskilled work as a medical biller during that time. The vocational expert was not asked any questions related to Rodriguez's mental impairments or how a limitation to unskilled work would affect her ability to do past relevant work.

Accordingly, the ALJ's error at step two in finding Rodriguez's mental impairments to be non-severe was not harmless. *See Petelle*, 2017 WL 1208442, at *6 (ALJ's failure to include mental limitations in plaintiff's RFC "was not harmless" where ALJ concluded she was capable of "sedentary, skilled work" and plaintiff would be found disabled if she were limited to "sedentary, unskilled work"); *Cheatham v. Berryhill*, No. 15-cv-1382-JPG-CJP, 2017 WL 553012, at *6 (S.D. Ill. Feb. 10, 2017) (ALJ's failure to consider plaintiff's mental limitation not harmless where, "[b]ecause of her age, if plaintiff were limited to sedentary work at the unskilled level, she would be deemed disabled").

This case is therefore remanded for further proceedings. On remand, the ALJ shall: (1) consider Rodriguez's mental impairments to be severe at step two as of his initial ruling in 2018; (2) conduct an analysis at steps three, four, and five on that basis; (3) determine whether, in view of her mental and physical impairments, Rodriguez was capable of semiskilled work or capable of unskilled work only, and the consequences of such a determination under the Grid Rules; (4) if the evidence shows that Rodriguez was disabled during a closed period of disability, determine the dates when that period began and ended; and (5) further develop the medical record as necessary and appropriate.[13]

---

[13] Although this Opinion describes Rodriguez's mental impairments as severe during the period from 2015 to 2018, there is some evidence that they remained severe after that point. It is for the ALJ, in

## CONCLUSION

For the reasons stated above, Rodriguez's motion for judgment on the pleadings is **GRANTED,** the Commissioner's cross-motion for judgment on the pleadings is **DENIED**, and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

DATED:     New York, New York
             March 29, 2024

_____
GARY STEIN
United States Magistrate Judge

---

the first instance, to determine for how long Rodriguez's mental impairments persisted and the precise dates of any closed period of disability.  *See, e.g.*, *Johnson v. Kijakazi*, No. 20 Civ. 2630 (BCM), 2021 WL 5513491, at *17 (S.D.N.Y. Nov. 24, 2021) (determination of closed period of disability "is a fact-intensive analysis best suited for the ALJ in the first instance").